## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERNEST WOODALL,                    :
          Petitioner,          :
                          :      Civil Action No. 3:13-cv-816
   v.                              :
                          :      (Judge Mariani)
PA BOARD OF PROBATION AND          :
PAROLE, *et al.*,                  :
          Respondents.        :

## MEMORANDUM

Petitioner, Ernest Woodall ("Woodall"), an inmate currently confined at the Fayette

State Correctional Institution in LaBelle, Pennsylvania, filed the instant petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254[1] in the United States District Court for the

Western District of Pennsylvania. (Doc. 1). This action was subsequently transferred from

the Western District to the Middle District of Pennsylvania, and was electronically received

in this Court on April 1, 2013. (Docs. 4, 5).

In the petition, Woodall alleges that the Pennsylvania Board of Probation and Parole

("Board") violated his due process rights by failing to reinstate his appeal rights *nunc pro*

*tunc*, following the dismissal of his appeal, as untimely, challenging the Board's June 27,

2005 recommitment order. (Doc. 1). For the reasons that follow, the Court will deny the

---

[1] Woodall originally filed his petition under the provisions of 28 U.S.C. § 2241 and § 2254. The Court construes the petition as filed under the provisions of 28 U.S.C. § 2254. *See Washington v. Sobina,* 509 F.3d 613, 619 n.5 (3d Cir. 3007) ("a state prisoner challenging the validity or execution of his state court sentence must rely on the more specific provisions of § 2254 rather than § 2241") (citing *Coady v. Vaughn,* 251 F.3d 480, 485 (3d Cir. 2001)).

petition for writ of habeas corpus.

## I.    Background

On July 23, 1986, Woodall pled guilty in the Allegheny County Court of Common Pleas to Criminal Attempt and four (4) counts of Burglary. (Doc. 15-1, Ex. A; *see* https://ujsportal.pacourts.us, electronic docket number CP-02-CR-0008320-1996). He was sentenced to an aggregate five (5) to twenty-five (25) year term of imprisonment. (*Id.*). The minimum date of his sentence was January 3, 1991, and the maximum date was January 3, 2011. (Doc. 15-1, Ex. A).

On January 31, 1991, Woodall was refused parole. (Doc. 15-1, Ex. B). Thereafter, on April 3, 1991, the Board paroled Woodall from his sentence. (Doc. 15-1, Ex. C).

On January 7, 1992, while on parole, Woodall was arrested by the Pittsburgh Police Department and charged with several crimes including Aggravated Assault, Recklessly Endangering Another Person, Fleeing or Eluding, Possession of an Altered Document or Plate, Careless Driving, and Driving on a One-Way Roadway and Rotary Traffic Island. (Doc. 15-1, Ex. D).

On March 30, 1992, the Board continued Woodall on parole pending disposition of the criminal charges. (Doc. 15-1, Ex. E).

On March 3, 1993, the Board entered a decision to recommit Woodall as a convicted parole violator to a state correctional institution, when available, to serve twelve (12) months

2

backtime for the recent criminal charges. (Doc. 15-1, Ex. F). However, on January 4, 1995,

the Board rescinded its March 3, 1993 decision to recommit Woodall as a convicted parole

violator. (Doc. 15-1, Ex. G). Referencing its March 30, 1992 action, the Board continued

Woodall on parole, pending disposition of the criminal charges related to the January 7,

1992 arrest. (Id.).

On May 5, 1996, Woodall was involved in a shootout with Pittsburgh Police and

charged with Criminal Attempt Homicide. (Doc. 15-1, Ex. I). Woodall failed to report as

instructed on May 5, 1996. (Doc. 15-1, Ex. H). On May 7, 1996, Woodall was declared

delinquent, effective May 5, 1996. (Id.).

In April 2003, it was discovered that Woodall was arrested on February 4, 2003 in

Birmingham, Alabama, and was detained in Alabama under the name "Allen Alphonso

Garner." (Doc. 15-1, Ex. I). Woodall was transferred back to Pennsylvania on August 2,

2003, and placed in the Allegheny County Jail. (Id.).

On September 18, 2003, the Board recommitted Woodall to a state correctional

institution as a technical parole violator to serve eighteen (18) months backtime, when

available. (Doc. 15-1, Ex. J). The Board extended Woodall's parole violation maximum

date to March 30, 2018, due to delinquency. (Doc. 15-1, Ex. K).

In November 2004, Woodall was found guilty in the Court of Common Pleas of

Allegheny County of Criminal Attempt Homicide, Aggravated Assault, and Carrying a

3

Firearm Without a License. *See* (https://ujsportal.pacourts.us, electronic docket number

CP-02-CR-0008320-1996; Doc. 19-1, Ex. GG, pp. 11-12). On February 1, 2005, Woodall

was sentenced to four (4) consecutive sentences of eight (8) to twenty (20) years, for a total

aggregate sentence of thirty-two (32) to eighty (80) years. (*Id.*; *see also* Doc. 15-1, Ex. L).

On April 25, 2005, a revocation hearing was held at the Greene State Correctional

Institution. (Doc. 15-2, Ex. M; Doc. 19-1, Ex. GG). Subsequent to the hearing, on June 17,

2005, the Board rendered a decision to recommit Woodall as a convicted parole violator to

serve his unexpired term of nineteen (19) years, nine (9) months. (Doc. 15-2, Ex. N). The

Board recalculated Woodall's parole violation maximum date to November 3, 2024. (*Id.*).

The decision stated, "IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A

REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS

OF THIS ORDER." (*Id.*). This decision was mailed to Woodall on June 27, 2005. (*Id.*).

On December 21, 2005, counsel for Woodall filed a request for administrative review

*nunc pro tunc*, challenging the Board decision mailed on June 27, 2005. (Doc. 15-2, Ex. O).

In the appeal, counsel argued that the April 25, 2005 revocation hearing was untimely. (*Id.*).

Counsel claimed that the Board had notice of Woodall's new conviction on December 12,

2004, and the revocation hearing was not held until April 25, 2005, beyond the one-hundred

twenty (120) days specified in the regulations. (*Id.*).

On February 1, 2006, the Board dismissed Woodall's administrative appeal as

4

untimely. (Doc. 15-2, Ex. P). The Board explained as follows:

> Board regulations provide that administrative appeals must be received at the
> Board's Central Office within 30 days of the mailing date of the Board's order.
> 37 Pa. Code § 73.1(a). Because your appeal was not received within 30 days
> of the mailing date of the decision mailed October 21, 2005 it cannot be
> accepted. ... Furthermore, you do not allege sufficient grounds to accept your
> appeal on a *nunc pro tunc* basis.

(*Id.*).

On January 9, 2006, the Board received an additional request for administrative

relief filed by Woodall, again challenging the decision mailed on June 27, 2005. (Doc. 15-2,

Ex. Q). On March 9, 2006, the Board denied Woodall's request, stating that "second or

subsequent requests for administrative relief will not be received" per Board regulations.

(Doc. 15-2, Ex. R). The Board noted that Woodall previously filed a request for

administrative relief from the June 27, 2005 decision, and a response was rendered on

February 1, 2006. (*Id.*). Therefore, his request seeking relief from the same decision was

dismissed as unauthorized. (*Id.*).

Woodall subsequently filed two (2) additional requests for administrative relief, again

challenging the decision mailed on June 27, 2005. (Doc. 15-2, Ex. S). On May 20, 2008,

the Board dismissed both requests as unauthorized. (Doc. 15-2, Ex. T).

On June 25, 2008, Woodall filed a petition for review in the Pennsylvania

Commonwealth Court challenging the denial of his administrative appeal as untimely. (Doc.

15-2, Ex. U). On July 3, 2008, the Commonwealth Court dismissed Woodall's petition for

5

lack of original jurisdiction. (*Id.*).

On July 16, 2008, Woodall sent a letter to the Board requesting *nunc pro tunc* relief

from the Board decision mailed on June 27, 2005. (Doc. 15-2, Ex. V). On August 26, 2008,

the Board dismissed Woodall's request for administrative relief as second or subsequent,

and as being untimely. (Doc. 15-2, Ex. W).

On October 1, 2008, Woodall filed a petition for writ of mandamus in the

Pennsylvania Commonwealth Court, challenging the denial of his administrative appeal as

untimely. (Doc. 15-2, Ex. X). On October 2, 2008, the Commonwealth Court dismissed

Woodall's petition for lack of original jurisdiction. (*Id.*).

On October 14, 2008, Woodall filed another petition for writ of mandamus in the

Pennsylvania Commonwealth Court, again challenging the denial of his administrative

appeal as untimely. (Doc. 15-2, Ex. Y). On October 20, 2008, the Commonwealth Court

dismissed the petition as duplicative of the petitions previously filed by Woodall. (*Id.*).

On August 28, 2009, Woodall filed a petition in the Pennsylvania Commonwealth

Court titled, "Appeal of Denial of Reinstatement of Appeal Rights, Nunc Pro Tunc",

challenging the denial of his administrative appeal as untimely. (Doc. 15-2, Ex. Z). On

September 1, 2009, the Commonwealth Court dismissed the petition and advised that the

court's "original jurisdiction cannot be used to revive lapsed appeal rights." (*Id.*). The court

further stated that Woodall "does not allege facts that would excuse his failure to appeal

6

respondent's order mailed February 1, 2006 and justify granting nunc pro tunc relief." (*Id.*).

On November 16, 2009, Woodall filed a petition for review *nunc pro tunc* in the

Pennsylvania Commonwealth Court. On November 23, 2009, the Commonwealth Court

dismissed Woodall's petition as untimely filed. (Doc. 15-3, Ex. AA). The court stated as

follows:

> The February 1, 2006 decision dismissed petitioner's nunc pro tunc
> administrative appeal. Petitioner does not explain the delay in filing his
> petition for review in this court. He avers that he corresponded with the
> Board in May 2008, and that he filed four unsuccessful actions in this court's
> original jurisdiction in 2008 and 2009, attempting to obtain review of the
> Board's June 2005 recommitment decision. None of petitioner's averments
> explain his failure to file a timely appellate petition for review of the Board's
> decision mailed on February 1, 2006.

(*Id.*).

On December 21, 2009, Woodall filed a "Petition for Permission to Appeal Nunc Pro

Tunc" in the Pennsylvania Commonwealth Court, again challenging the denial of his

administrative appeal as untimely filed. (Doc. 15-3, Ex. BB). On December 28, 2009, the

Commonwealth Court dismissed the petition as duplicative of the petition previously filed on

November 16, 2009. (*Id.*).

On November 18, 2011, the Board received an additional request for administrative

relief filed by Woodall, again challenging the decision mailed on June 27, 2005. (Doc. 15-3,

Exs. CC, DD). On February 7, 2012, the Board returned the administrative request to

Woodall as a second or subsequent request that would not be received. (Doc. 15-3, Ex.

7

DD).

On February 24, 2012, Woodall filed a petition for review with the Pennsylvania Commonwealth Court, challenging the denial of his administrative appeal as untimely filed. (Doc. 15-3, Ex. EE). On March 14, 2012, the Commonwealth Court dismissed the petition as duplicative of petitions previously filed by Woodall. (Doc. 15-3, Ex. FF). The Court explained that "petitioner's challenge to respondent's February 1, 2006 dismissal of his administrative appeal and its subsequent denial of his nunc pro tunc administrative appeal, were actions properly brought in this court's appellate jurisdiction, ... , and this court's original jurisdiction cannot be used to revive lapsed appeal rights." (*Id.*).

Woodall filed the instant petition for writ of habeas corpus on February 19, 2013. (Doc. 1). Respondents argue that the instant petition must be dismissed because it is untimely filed, the claims are procedurally defaulted, and the Board properly denied his administrative appeal as untimely. (Docs. 15, 16).

## II. Discussion

### A. AEDPA Statute of Limitations

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set

forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See* 28 U.S.C. § 2244(d)(1). Specifically, a state

prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of

limitations that provides, in relevant part, as follows:

> (d)(1) A one-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) *the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.*

28 U.S.C. § 2244(d)(1) (emphasis added).

After applying 28 U.S.C. § 2244(d)(1)(D) to determine when the statute of limitations

within which to file a federal habeas petition began to run, it is concluded that the limitations

period started on July 27, 2005, thirty (30) days after the Board's decision was mailed to

Woodall. An examination of the procedural history establishes that the instant petition is

time-barred.

The Board's decision was mailed to Woodall on June 27, 2005.  (Doc. 15-2, Exhibit

N).  Woodall had thirty (30) days from that mailing date to appeal the decision to the Board.

*See* 37 Pa. Code § 73.1.[2]  Woodall failed to file an appeal with the Board within that thirty

(30) day time period.  Therefore, the statute of limitations began to run at the expiration of

the appeal period, on July 27, 2005, and Woodall was required to file his habeas petition by

July 27, 2006.  Hence, the federal petition, which was filed in February 2013, is clearly

untimely.  However, the Court's analysis does not end here; consideration of statutory and

equitable tolling must be undertaken.  *See* 28 U.S.C. § 2244(d) (enumerating statutory

tolling provisions); *Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir.), *cert. denied*, 540 U.S. 921

(2003) (holding that AEDPA's time limit is subject to the doctrine of equitable tolling, a

judicially crafted exception).

Woodall is not entitled to a new, extended deadline for the AEDPA's limitation period

pursuant to 28 U.S.C. § 2244(d)(1).  Woodall has not made a showing that the factual

predicate of his claims was not discoverable long ago through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(D).  Thus, the Court finds no basis for statutory tolling.

Equitable tolling of the limitations period is to be used sparingly and only in

"extraordinary" and "rare" circumstances.  *See Satterfield v. Johnson*, 434 F.3d 185, 195 (3d

---

[2]     37 Pa. Code § 73.1(a) provides, in part, that "[a]ppeals shall be received at the Board's Central
Office within 30 days of the mailing date of the Board's order."

Cir. 2006); *LaCava v. Kyler*, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. *See Merritt*, 326 F.3d at 168. Generally, a litigant seeking equitable tolling must establish the following two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

With respect to the diligent pursuit of rights, a petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. *See Robinson v. Johnson*, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. *See LaCava*, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. *See Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999); *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005).

11

As to his delay in pursuing state court remedies, Woodall claims that he is entitled to equitable tolling due to "unprofessional attorney conduct". (Doc. 1, pp. 4-6). Woodall states that he contacted the Westmoreland County Public Defender's Officer by letter dated June 23, 2005. (*Id.* at pp. 1-2; Doc. 15-2, Ex. Q). While waiting for a response from the Public Defender's Office, Woodall states that, on June 30, 2005, he received the Board's decision recommitting him as a convicted parole violator. (Doc. 1, p. 2). On July 5, 2005, Woodall received a letter from a Public Defender in Westmoreland County, instructing Woodall to obtain and complete an application for a Public Defender. (*Id.*; Doc. 15-2, Ex. Q). Woodall claims that he received the proper application on or about July 12, 2005 and subsequently mailed the completed application to the Public Defender's office, to which he received no response. (Doc. 1, p. 2). On November 11, 2005, Woodall wrote a letter to the Public Defender's office inquiring about the status of his appeal. (*Id.*). On December 12, 2005, the Public Defender replied that the office had not heard from Woodall since his initial inquiry in June 2005. (Doc. 15-2, Exs. O, Q). Nonetheless, the Public Defender informed Woodall that he would attempt to take any available actions to pursue his appeal. (*Id.*). On December 14, 2005, a Public Defender filed a request for administrative review *nunc pro tunc* with the Parole Board. (*Id.*). The Board dismissed Woodall's administrative appeal as untimely. (*Id.*). Woodall argues that the Public Defender's "unprofessional 'egregious' attorney conduct" constitutes extraordinary circumstances. (Doc. 1, pp. 5-6). As evidenced

by the Public Defender's letters, the office never received any correspondence from

Woodall after his initial inquiry in June 2005. (Doc. 15-2, Ex. O). Upon receipt of Woodall's

letter in November 2005, the Public Defender's office promptly filed a request for

administrative review *nunc pro tunc.* (*Id.*). Moreover, in non-capital cases, attorney error

has not been found to give rise to the extraordinary circumstances required for equitable

tolling. *See Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir. 2001). *See also Johnson v.

Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002) (although petitioner received erroneous advice

from defense counsel as to the habeas filing deadline in federal court and petitioner relied

on this advice, equitable tolling was not warranted). Additionally, any claim that petitioner

was unaware of the filing deadlines is likewise unavailing. *See Jones*, 195 F.3d at 160 (a

misunderstanding of the exhaustion requirement is insufficient to excuse failure to comply

with the federal habeas statute of limitations). Thus, Woodall does not establish that

extraordinary circumstances obstructed his pursuit of relief in state court.

Woodall presents absolutely no evidence to account for his delinquency in seeking

relief in federal court. Nor does he establish that extraordinary circumstances obstructed

his pursuit of relief in federal court.

In determining whether extraordinary circumstances exist to warrant the application

of equitable tolling, the Court must also examine petitioner's due diligence in pursuing the

matter under the specific circumstances he faced. *See Traub v. Folio*, 2004 WL 2252115,

13

*2 (E.D. Pa. 2004) (citing *Schlueter v. Varner*, 384 F.3d 69 (3d Cir. 2004) (affirming dismissal of the habeas petition as time-barred and not entitled to equitable tolling because lengthy periods of time had elapsed following the petitioner's conviction before he sought relief)). It is petitioner's burden to show that he acted with reasonable diligence and that extraordinary circumstances caused his petition to be untimely. *Id.* Under the circumstances of this case, Woodall fails to allege any steps that he took to timely file the instant federal habeas petition and that he was somehow prevented from timely filing. Hence, equitable tolling of the AEDPA statute of limitations is not warranted in this case.

    B.    *Procedural Default*

Absent unusual circumstances, federal courts will not consider the merits of a claim for habeas corpus unless the petitioner has complied with the exhaustion requirement set out at 28 U.S.C. § 2254(b)(1)(A). This provision requires that the petitioner give the state courts a fair opportunity to review allegations of constitutional error before seeking relief in federal court. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Pursuant to the habeas statute, a petitioner has not exhausted the remedies available in the courts of the state "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Petitioner bears the burden of demonstrating that he has satisfied the exhaustion requirement. *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

To properly exhaust a claim involving a determination by the Parole Board, the petitioner must first file a petition for administrative review with the Parole Board within thirty (30) days of the mailing date of the Parole Board's decision. *See* 37 Pa.Code § 73.1. After an administrative appeal to the Parole Board, a petitioner must present his claims to the Pennsylvania Commonwealth Court. *See* 42 Pa.C.S.A. § 763(a); *Bronson v. Pennsylvania Bd. of Prob. and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980). If dissatisfied with the result, petitioner must then file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. *See* 42 Pa.C.S.A. § 724; *McMahon v. Pennsylvania Bd. of Prob. and Parole*, 504 Pa. 240, 470 A.2d 1337 (1983). *See also Pagan v. Pennsylvania Bd. of Prob. and Parole*, 2009 WL 210488 *3 (E.D. Pa. 2009). If petitioner fails to seek review from the Supreme Court of Pennsylvania, then the state claim is unexhausted. *See Williams v. Wynder*, 232 F. Appx. 177, 181 (3d Cir. 2007).

Woodall fails to demonstrate that he satisfied the exhaustion requirement. Woodall is challenging a revocation decision mailed to him on June 27, 2005. Thus, he had the right to appeal the decision to the Board until July 27, 2005. However, Woodall failed to file an appeal within the prescribed period. He acknowledges that, "on or about June 30, 2005, Prisoner received PBPP's decision dated June 27, 2005, recommit[t]ing him as a Convicted Parole Violator (CPV) to serve the unexpired term of 19 years, 9 months backtime." (Doc. 1, p. 2). Woodall did not seek relief until December 21, 2005. Therefore, on February 1,

15

2006, his appeal was dismissed as untimely, without addressing the merits of his claim.

As stated, after an administrative appeal to the Parole Board, a petitioner must present his claims to the Pennsylvania Commonwealth Court within thirty (30) days after the order became final. *See* 42 Pa.C.S.A. § 763(a); Pa. R.A.P. 1512. Again, the Board's revocation/recalculation decision became final on July 27, 2005. Thus, Woodall had until August 26, 2005 to appeal to Commonwealth Court. However, Woodall did not file an appeal to the Commonwealth Court in its original jurisdiction until June 25, 2008. (Doc. 15-2, Ex. U). Therefore, the Commonwealth Court dismissed his petition for lack of original jurisdiction. (*Id.*). In 2008 and 2009, Woodall filed four (4) additional petitions in the Commonwealth Court's original jurisdiction. (Doc. 15-2, Exs. X, Z; Doc. 15-3, Exs. AA, FF). All four (4) petitions were dismissed. (*Id.*). On November 16, 2009, Woodall filed an appeal to the Commonwealth Court in its appellate jurisdiction. (Doc. 15-3, Ex. AA). The Commonwealth Court dismissed the appeal as untimely. (*Id.*). On December 21, 2009, Woodall filed another petition in the Commonwealth Court's appellate jurisdiction, which was dismissed as duplicative of the appeal filed on November 16, 2009. (Doc. 15-3, Ex. BB).

In light of the foregoing discussion, Woodall has not exhausted his state court remedies, and the time to do so has expired. His failure to timely present his claims at the state level constitutes an independent and adequate state ground sufficient to support a

16

procedural default of his claims. *Barnhart v. Kyler*, 318 F. Supp.2d 250 (M.D. Pa. 2004).

The merits of his procedurally defaulted claims cannot be reviewed unless he demonstrates

either cause for the procedural default and actual prejudice, or that a fundamental

miscarriage of justice will result if the court does not review the claims. *See McCandless v.*

*Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir.

1992). To demonstrate "cause" for a procedural default, he must point to some objective

external factor which impeded his efforts to comply with the state's procedural rule. *See*

*Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can

demonstrate that the outcome of the state proceeding was "unreliable or fundamentally

unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366

(1993). Woodall has not established sufficient cause for his default or demonstrated actual

prejudice that would justify overlooking the default in this case. *Cristin v. Brennan*, 281 F.3d

404, 412 (3d Cir. 2002). Nor is there any indication that a failure to review his claim will

result in a fundamental miscarriage of justice.

    C.    *Constitutional Claim*

    It is well established that "[t]here is no constitutional right or inherent right of a

convicted person to be conditionally released before the expiration of a valid sentence."

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). While "States

may under certain circumstances create liberty interests which are protected by the Due

Process Clause," *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), the Pennsylvania

Supreme Court has long held that the denial of parole does not implicate a constitutionally

protected liberty interest because parole is a discretionary matter, granted to a prisoner who

has demonstrated the ability to function in society as a law-abiding citizen. *Coady v.*

*Vaughn*, 564 Pa. 604, 770 A.2d 287 (Pa. 2001); *Rogers v. Pa. Bd. of Prob. & Parole*, 724

A.2d 319 (Pa. 1999). Thus, Woodall has no right to parole.

Woodall argues that "he was denied Due Process and Equal Protection in the filing

of his Administrative Appeal of the Board's June 25, 2005 decision[3], (i.e., the Constitutional

Right to effective assistance of counsel)." (Doc. 1, p. 8). He claims that he is

"'constitutionally entitled' to the assistance of counsel in the task of perfecting an appeal of a

Board decision to recommit him as a Convicted Parole Violator; which is imperative for a

Prisoner to receive DUE PROCESS and EQUAL PROTECTION." (*Id.* at pp. 8-9).

The Court finds this claim must be denied because Woodall was informed of his

thirty (30) day right to appeal his parole revocation/recommitment by the Board in its June

27, 2005 decision. Woodall chose not to take advantage of the administrative and state

court remedies available to him in a timely manner. Moreover, courts in this Circuit have

consistently concluded that there is no right to counsel in the parole revocation context and

have rejected claims of ineffective assistance of counsel. *See Alford v. Pennsylvania Board*

---

[3]     The Parole Board's decision is dated June 27, 2005. (Doc. 15-2, Ex. N).

18

*of Probation and Parole, et al.*, 2013 WL 4080007, \*12 (M.D. Pa. 2013) ("Since Petitioner did not have a federally protected right to counsel in the parole revocation context and since we have found that Petitioner [] was given all requirements of due process with respect to his parole revocation by the PA Board, we hold that his ineffective assistance of counsel claims do not entitle him to habeas corpus relief even Petitioner could prove such claims.") (Blewitt, M.J.); *Hutchinson v. Pennsylvania Board of Probation and Parole*, 2010 WL 3025122 (M.D. Pa. 2010) (Jones, J.); *Burgess v. Holt*, 2007 WL 2212811 (M.D. Pa. 2010) (Vanaskie, J.).

To the extent that Woodall claims he has a right to parole, *see* (Doc. 1, p. 8) ("[l]iberty interests that fall within this category include the revocation of parole"), and that the Parole Board violated these rights, he has no liberty interest in the anticipation of parole under any circumstances. (Doc. 1, pp. 7-9; Doc. 17).

In *Sandin*, 515 U.S. at 480-84, the Supreme Court held that a liberty interest is not created merely because a regulation limits the discretion of prison officials. Rather, courts should focus on the nature of the deprivation itself and the relevant inquiry is whether it was "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486; *see also Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997). It has been repeatedly recognized that Pennsylvania state law does not confer its inmates with a legally protected interest in parole eligibility. *Rodgers v. Parole Agent SCI-Frackville, Wech,*

19

*et al.*, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); *McCrery v. Mark*, 823 F. Supp. 288, 294

(E.D. Pa. 1993). While "States may under certain circumstances create liberty interests

which are protected by the Due Process Clause," *Sandin*, 515 U.S. at 483-84, the

Pennsylvania Supreme Court has long held that "a denial of parole does not implicate a

constitutionally protected liberty interest." *Coady*, 770 A.2d at 291; *see also Rogers*, 724

A.2d at 322-23 (affirming Parole Board's discretion to grant or deny parole because "parole

is a matter of grace and mercy shown to a prisoner who has demonstrated to the Parole

Board's satisfaction his future ability to function as a law-abiding member of society upon

release before the expiration of the prisoner's maximum sentence"). Thus, the denial of

parole to a Pennsylvania state inmate is not the type of significant and atypical hardship

contemplated by the Supreme Court in *Sandin*.

## III.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate

of appealability ("COA"), an appeal may not be taken from a final order in a proceeding

under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial

showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322

(2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

## IV. Conclusion

For the reasons set forth above, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

Date: December 10th, 2015

Robert D. Mariani
United States District Judge